(4 Misc. Rep. 240.)

NEW YORK COMMERCIAL CO. v. CARPENTER et al.

(Supreme Court, Special Term, New York County. June, 1893.)

FRAUDULENT CONFESSION OF JUDGMENT—EVIDENCE.

Under a contract between a copartnership and a corporation, the former was to carry on a manufacturing business, buying materials and paying all salaries and expenses, while the goods were to be sold by and in the name of the corporation, which was to determine when to give credit, without assuming any risk therefrom. No goods were consigned to the corporation, as was agreed, but some months later the corporation took a floor in the building occupied by the copartnership, and the latter sent there for all its goods; the floor remaining, however, in charge of employes of the copartnership. The latter then, without notice to other creditors, confessed judgment to the corporation. No credits were allowed on the judgment, as should have been done, and it consisted chiefly of commissions for selling goods which were actually sold by the partnership. At the sale under the judgment, B., who was the sole person interested in the corporation, purchased the property, worth from $30,000 to $60,000, for $12,000, and organized another company, to which he transferred the property, and which continued the copartnership business under the same conditions, employing the members of the firm, and most of the same employes. *Held,* that the transactions were void as against creditors of the copartnership.

Action by the New York Commercial Company against Charles G. Carpenter and others to set aside a judgment by confession as in fraud of creditors. Judgment for plaintiff.

A. Blumenstiel, for plaintiff.

Horwitz & Hirshfield, for defendant Rubber Company.

E. J. Jacobs, for defendant Carpenter.

INGRAHAM, J. On the 4th day of May, 1889, when the agreement between the copartnership doing business under the name of

C. C. Carpenter and the Century Rubber Company was made, the copartnership had good credit, and an apparent surplus of upwards of $40,000. At that time the defendant Blun organized the Century Rubber Company, he being the only person interested in that company, and made the contract hereinafter mentioned with the copartnership. In about 10 months thereafter, Blun, either as the Century Rubber Company or as the Lace-Back Suspender Company, was the owner of all the assets of the copartnership, valued upon the books at upwards of $100,000, leaving the other creditors of the copartnership, to whom they owed upwards of $45,000, without any property from which the indebtedness could be paid; and the business conducted by the copartnership was being continued by the Lace-Back Suspender Company, managed by the members of the copartnership and their former employes, at the same place at which the copartnership did its business, and with the same fixtures and machinery with which that business was conducted. The other creditors, including plaintiff, had furnished the materials with which the goods of the copartnership had been manufactured; the manufactured articles appearing in the possession of the Lace-Back Suspender Company; the business being conducted in the same manner, and by the same individuals, with but a change of name. The contract under which the relations between Blun, the corporation owned by him, and the firm of Carpenter & Co., commenced, is certainly a remarkable one. By it the copartnership was to have been liable for all of the money necessary to carry on the business. They were to buy all of the materials used in the manufacture of their goods, pay all the expenses of the manufacturing supply, and all the clerks and salesmen necessary for selling the goods. The goods, however, were to be sold in the name of the Century Rubber Company, and the Century Rubber Company was to have entire control of the sales; determine whether or not the goods were to be sold on credit, but was not to bear the risks of any credit so given. The copartnership was to consign to the corporation all of its merchandise manufactured, and the corporation was to have a lien upon all goods, wares, and merchandise consigned, and upon every and all property, of every kind, in the possession of the corporation, and upon any and all outstandings created by the corporation in making the sales of the merchandise so consigned, as security for all advances of every kind, and for all indebtedness of every nature existing in favor of the corporation. Commission was to be paid to the corporation for work not prepared by it. Under this agreement certain advances were made to the copartnership. Upon the facts proved, it is a little difficult to see just how much actual money, over and above the amount received for sales of the goods of the copartnership, was actually made by the corporation. The business was, however, managed entirely by the copartnership and its employes, and, until just about the time of the failure, no goods appear to have been actually delivered to the corporation. Some time in February, 1890, the firm attempted to transfer to the

rubber company all of its manufactured goods. The rubber company took a floor in the building occupied by the copartnership, and to that floor the copartnership sent for all of its goods. That floor, however, remained in charge of the employes of the copartnership, who were paid by it. Immediately after that transfer the copartnership confessed judgment to the corporation for the full amount that appeared upon the books as owing by the copartnership to the corporation, and under that judgment the sheriff levied upon all of the property of the copartnership not before delivered to the corporation. No credit was allowed upon that judgment for the amount of goods in the hands of the corporation, belonging to the copartnership, but the judgment was entered as if the amount of the advances made by the corporation was due to it by the copartnership, and that amount that was due was made up by charging commissions under the contract, which appear to have exceeded $8,000, and which, by the contract, were to be paid to the corporation as commissions for selling the goods that were sold exclusively by employes of the copartnership, whose services were paid for by the copartnership. Under this confession of judgment, the sheriff proceeded to sell all of the property of the copartnership, and it was purchased by Blun. No cash was paid by him at the sale, but the purchase price credited upon the judgment in favor of the Century Rubber Company, and thus property that appeared by the books of the company to have been worth between $30,000 and $60,000 was purchased by Blun for $11,800. Blun, thus being possessed of all the property of the copartnership within this state, as purchaser at the sheriff's sale, or as consignee under the agreement, proceeded to organize the Lace-Back Suspender Company. To that corporation was transferred the property that had been purchased under the execution issued upon the confessed judgment, and all of the goods that had been consigned to the Century Rubber Company under the contract, without notice to any one, and merely upon consultation with one of the members of the copartnership as to its value, and he credited that amount upon his judgment. The Lace-Back Suspender Company thereupon continued the business theretofore conducted by the copartnership employing the two copartners, and most of their former employes, at the same place, and under substantially the same conditions except the change of name. The whole assets of the copartnership are now disposed of, and the creditors who have furnished the materials out of which these manufactured goods have been made are absolutely without remedy.

The position that the Century Rubber Company assumes would appear to be inconsistent. It enters its judgment as a general creditor of the copartnership, and under that judgment levies upon, and obtains possession of, all the property not before consigned to it; but as to the property consigned to it to repay the advances, it made no sale, but undertook to transfer such property to another corporation, which was in reality owned by the same individual that owned the consignee corporation, and

credited the amount that he agrees with himself to pay for such property upon the judgment that he had obtained against the consignor. I think all of the circumstances surrounding this transaction, from the making of the contract to the final consummation, when all of the property is found in the hands of the Lace-Back Suspender Company, conclusively establish that the intent which all of the parties to this transaction had was to dispose of the property of the copartnership so as to defraud its creditors, and continue its property and business for the benefit of Blun and the copartners. It seems to me no other conclusion can be drawn from the acts of the parties, and from the result that was actually accomplished, but that a scheme was carefully prepared to prevent any of the creditors from obtaining the application of any portion of the copartnership property to the payment of their demands. If this contract, when made, had been a bona fide contract, intended to be carried out, the parties would not at once have proceeded to abrogate its provisions, by failing to consign any goods to the corporation. It clearly was intended to be used only in case the copartnership failed in its enterprise, and then it was to be used to prevent other creditors from obtaining the application of any portion of the copartnership property to the payment of their claims. When the firm failed, none of the steps were taken that are usual in cases of an honest failure. No notice to any of the other creditors was given, but this corporation. Blun, as the owner of the corporation, calmly proceeded to take possession of such property as could be held to come under the provisions of the contract, and then, under a confessed judgment, appropriated the balance of the copartnership property. Many other facts might be mentioned, surrounding the whole transaction, which go to confirm this conclusion. This was the method by which the machinery used in the manufactory in New Jersey was disposed of, and got back to Blun. The patent under which the copartnership had done business also arrived at the same destination; and although, as is usual in such cases, the parties to the transaction all testified that there was no fraudulent intent, still it is clear that they intended to accomplish what was accomplished, and that was, I think, clearly a fraud upon the other creditors. My conclusion, therefore, is that plaintiff is entitled to judgment declaring the confessed judgment, and all proceedings under it, void, as part of a scheme to hinder, delay, and defraud creditors, and directing the defendant and the two copartners to account for the property of this copartnership that they have received. The form of judgment and the decision to be settled on notice.